# EXHIBIT B

**FLORA EDWARDS**
ATTORNEY AT LAW
A PROFESSIONAL CORPORATION

ADMITTED IN NY, NJ & FLA

115 BROADWAY - SUITE 1505 ★ NEW YORK, NEW YORK 10006 ★ TEL: 212-785-3344 ★ FAX: 212-577-2865 ★ E-MAIL: FEDWARDS@FMELAWPC.COM

May 12, 2020

By email to: SCH/ExecAssistant@bop.gov
and Federal Express
Warden Scott Finley
F.C. I. Schuykill
Interstate 81 & 901 W
Minersville, PA 17954

       Re: James Ida - Reg. #43064-054
          Emergency Request for Compassionate Release

Dear Warden Finley:

Please accept this emergency request for a reduction in sentence pursuant to 18 U.S.C. § 3582(c) or immediate transfer to home confinement or a halfway house pursuant to 18 U.S.C. §3624(c), on behalf of inmate James Ida, Reg. No. 43064-054.. Given his deteriorating physical condition and the extraordinary circumstances created by the ongoing coronavirus pandemic, including the restrictions currently in place at FCI Schuykill, Mr. Ida is unable to submit this request himself.

I. **Mr. Ida's Medical Conditions and Acute Vulnerability to COVID-19**

Mr. Ida is an 80 years old man who suffers from multiple documented medical conditions that pout him among those most vulnerable to COVID-19, and he is likely to suffer dire consequences if he were to contract this disease. As reflected in his Bureau of Prisons (":BOP") medical records, while in custody Mr. Ida has been treated for, among things, Parkinson's Disease, chest pain, shortness of breath, and hypertension. At present Mr. Ida is experiencing involuntary tremors, muscle stiffness, slowed movements, problems with balance, and other symptoms. According to the Centers for Disease Control ("CDC") and other public health authorities, Mr. Ida's medical condition, as well as his age, place him with the population that is most vulnerable to COVID-19, with some of the highest rates of hospitalization and death.[1]

In the United States, there have been about 1.35 million confirmed cases and 80,700 deaths. As has been sadly demonstrated at correctional facilities across the county, the coronavirus infection rate in jails and prisons has far outstripped that in the general public.

---

  [1]Joseph A. Bick, *Infection Control in Jails and Prisons*, Clinical Infectious Diseases (45(8);1047-1055, available at https://doj.or/10.1086/52910

498 CLIFF ROAD    SEWAREN, NJ 07077    TEL: 732-208-1408    FAX: 732-750-4975

Warden Scott Finley
Re: James Ida - Reg #43064-054
Application for Compassionate Release
May 13, 2020 - Page 2 of 5

The coronavirus that causes COVID-19 is highly contagious and public health experts agree that incarcerated individuals "are at special risk of infection, given their living situations" and "may also be less able to participate in proactive measures to keep themselves safe"[2] The steps recommended by CDC to prevent the spread of the disease – including frequent hand washing and the use of hand sanitizer, social distancing, wearing a face mask and other protective gear, and frequent disinfecting of living space[3] are impossible for inmates such as Mr. Ida who, due to the fact that he has difficulty ~~speaking clearly, getting dressed and performing other daily living activities without assistance~~, make social distancing impossible.

II.     **The BOP Should Grant Mr. Ida Compassionate Release**

Mr. Ida is entitled to compassionate release. Pursuant to 18 U.S.C. §§ ) (1)(A), the BOP may move to reduce a term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction: and that a reduction would be consistent with relevant Sentencing Commission policy statements.[4] The compassionate release program is a program designed for deathly-sick and elderly prisoners "who are 65 and older, suffer from chronic or serious medical conditions related to the aging process, experience deteriorating mental or physical health that substantially diminishes their ability to function in a correctional facility, have served at least 50% of their sentence, and [have reached a state in which] conventional treatment promises no substantial improvement to their mental or physical condition."[5] Included in the list of permanent, progressive, diseases which are associated with aging are Degenerative neurological diseases such as Parkinson disease.[6]

Even, absent the unprecedented dangers of the current pandemic, Mr. Ida's advanced

---

[2] Achieving a Fair and Effective COVID-19 Response: An Open Letter to Vice-President Mike Pense, and Other Federal, State and Local Leaders from Public Health and Legal Experts in the United States (March 2, 2020) available at https://bit.ly/2W9V6oS

[3] CDC "How to Protect Yourself" https://www.cdc.gov/coronavirus/2019-ncov/prepare/prevention.html

[4] The relevant policy statement of the US Sentencing Commission provides that "extraordinary and compelling reasons: are ones which involve (A) the medical condition of the defendant, (B) the age of the defendant, © his or her family circumstances, and (D) any "other" extraordinary and compelling reason not described in (A) through © that the Director of the Bureau of Prisons determines to be, in combination with (A) through © or on its own, an extraordinary and compelling reasons. *See* U.S.S.G. §1B1.13, Policy Statement n. 1 (2018)

[5] Compassionate Release Criteria for Elderly Inmates, Federal Bureau of Prisons, Clinical Guidance . Available at 2019_compassionate_release_cpg.pdf

[6] *Ibid*

Warden Scott Finley
Re: James Ida - Reg #43064-054
Application for Compassionate Release
May 13, 2020 - Page 3 of 5

age and medical condition which impairs his ability to function under normal circumstances, makes him eligible for compassionate release. However, added to the risks of continued incarceration due to his age and poor health, the unprecedented nature of the COVID-19 pandemic clearly constitutes an "extraordinary and compelling reason" to grant this application.

The relief requested is based on a combination of Mr. Ida's age, health and the unprecedented COVID-19 pandemic which presents unique risks to him. Due to the combination of the ravages of Parkinson's disease and the conditions of his confinement, it is virtually impossible for Mr. Ida to take the basic steps necessary to avoid the disease, such as self-isolating These factors fall well within the "other reasons" contemplated by Sentencing Commission Application Note 1(D). Mr. Ida has been in custody for 24 years. He has been a model prisoner Given his clean record in prison combined with his advanced age and medical ailments and poor prognosis his release would be fully consistent with other decisions by the Commission regarding similarly situated offenders and would reflect the judgment of the courts that where prisoners have maintained a record of good conduct, ill health combined with advanced age resulting a limited life expectancy are considered mitigating circumstances sufficient for a grant of parole. *See Adams v. Schwartz*, 2008 WL 4224561, 11 (E.D.Cal.,2008)(denial of parole after 14 years in prison had no rational basis where prisoner, a 69 year old diabetic suffered from hypertension, chronic hepatitis C viral infection, bilateral lower extremity venous insufficiency and had history of good conduct.) There is no reason to require that Mr. Ida be condemned to die in custody. He has paid his debt to society and asks only that he be permitted to spend his last days at home with his family.

Mr. Ida's advanced age and failing health constitute mitigating circumstances and compelling reasons for a decision to grant release on the grounds of compassion.

III.     In the Alternative, the BOP Should Transfer Mr. Ida to Home Confinement

To the extent that Mr. Ida's application for Compassionate Release is not granted, he should be transferred to home confinement pursuant to 18 U.S.C. §3624(c)(1). While authority under Section 3624(c)(2) has been limited to the shorter of six months or 10% of a prisoner's sentence, this authority was broadened by the recently enacted Coronavirus Aid, Relief and Economic Security ("CARES") Act[7] Because the President has declared a National Emergency under the National Emergencies Act with respect to the COVID-19 pandemic[8], the Attorney General has

---

[7] H.R. 748, §12003(b)(2), 116th Cong. (2020)

[8] Hon. President Donald J. Trump, Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19), Outbreak (Mar. 13, 2020) Available at https//www.whitehouse.gov/presidential-actions-proclamation-declaring-national emergency-concerning-novel coronavirus-disease-covid-19-outbreak/

Warden Scott Finley
Re: James Ida - Reg #43064-054
Application for Compassionate Release
May 13, 2020 - Page 4 of 5

the authority to declare that emergency conditions will materially affect the functioning of the BOP, which in turn authorizes you to "lengthen the maximum amount of time... to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of Title 18, United States Code.[9]

Consistent with this statutory imperative, Attorney General Barr has instructed BOP to prioritize the use of its authority to "grant home confinement for inmates seeking transfer in connection with the on-going COVID-19 pandemic."[10] Mr. Ida clearly satisfies many of the discretionary factors Attorney General Barr identified as supporting immediate transfer to home confinement, including:

- *The age and vulnerability of the inmate to COVID-19, in accordance with the Centers for Disease Control and Prevention (CDC) guidelines*

    As discussed above, Mr. Ida is among the most vulnerable populations to COVID-19 in light of his advanced age, and degenerative medical condition.

- *The inmates conduct in prison*

    As discussed above, Mr. Ida has demonstrated a consistent record of good conduct.

- *Whether the inmate has a demonstrated and verifiable re-entry plan that will prevent recidivism and maximize public safety, including verification that the conditions under which the inmate would be confined upon release would present a lower risk of contracting COVID-19 than the inmate would face in his BOP facility*

    After more than two decades in custody, Mr. Ida is blessed to still have the support of his family who have maintained constant contact with him throughout the years. Upon release from prison he will reside with his wife, ~~Irene Ida, at her home at 25-609 Barker St. Mount Kisco~~ NY 10549. He will be eligible for Medicare Parts A and B.

---

[9] CARES Act, §12003(b)(2).

[10] Att'y. Gen. William P. Barr, Mem. for Dir. of Bureau of Prisons (March 26, 2020) available at https://www.justice.gov/file/1262731/download

Warden Scott Finley
Re: James Ida - Reg #43064-054
Application for Compassionate Release
May 13, 2020 - Page 5 of 5

In light of his advanced age and declining health, he presents no risk of recidivism especially in light of his degenerative neurological condition which progressively leaves him incapacitated. All he asks is the opportunity to spend his final days at home with his family.

Release to home confinement, where Mr. Ida can self-isolate, and have the assistance he needs to undertake the recommended hygiene precautions, and be quarantined would demonstrably present a lower risk to him of contracting COVID-19 than remaining in a facility n which he cannot avoid close interaction and cannot protect himself from contagion.

For all of these reasons, Mr. Ida should, be transferred to home confinement under Section 3624(c) and the CARES Act.

In light of the exigencies of this request, a prompt decision on this application is urgently requested. Thank you for your kind consideration of this request.

Very truly yours,

/s/ *Flora Edwards*

Flora Edwards, Esq.
*Attorney for James Ida*

cc:   Ms. White (by email only to jzwhite@bop.gov)
      James Ida (by United States Mail)