

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 21, 2020

**BY ECF**
The Honorable Lewis A. Kaplan
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl St.
New York, NY 10007

  Re: **United States v. James Ida**, 96 Cr. 430 (LAK)

Dear Judge Kaplan:

  The Government writes in opposition to defendant James Ida's motion for compassionate release. (Dkt. 720 ("Def. Mot.")). As described in further detail below, the defendant's motion should be denied because he has failed to demonstrate extraordinary and compelling reasons warranting his early release, and also because the Section 3553(a) factors weigh heavily against reducing the defendant's sentence.

**I. Background**

  Ida was a member of the Genovese organized crime family (the "Genovese Family") of the La Cosa Nostra and served as the Consigliere of the Genovese Family from in or about 1990 until his arrest in 1996. (PSR ¶ 100). In his role as Consigliere, Ida was responsible for overseeing the criminal activities of the Genovese Family and resolving disputes between the Genovese Family and other organized crime families. (*Id.*). Ida's responsibilities as Consigliere included ordering the murder of people who threatened the Genovese Family's criminal enterprise. (*Id.*). Ida also oversaw the criminal activities of his own crew. (*Id.*).

  In 1996, Ida was indicted and arrested, along with several associates, on racketeering and other charges, including three conspiracies to murder. (*Id.* ¶¶ 209, 1-66). Ida's offense conduct included the following crimes:

- Conspiracy to Murder Antonio Dilorenzo: Dilorenzo was a Genovese soldier suspected of being a cooperating witness for the Government. As a consequence and at Ida's direction, Dilorenzo was murdered in his home. (*Id.* ¶¶ 118-19).

- Conspiracy to Murder Dominic Tucci: Tucci had an affair with the girlfriend of a Genovese associate, John Schenone. Consistent with the rules of La Cosa Nostra,

    Schenone sought Ida's approval to murder Tucci, which Ida granted. The murder did not take place, however, because one of the individuals enlisted to assist with the murder began cooperating with the Government. (*Id.* ¶¶ 120-22).

- Extortion of Mason Tenders (Local 46): The Genovese family, including Ida, conspired to control this union, consisting typically of construction site workers, in order to extort contractors who hired the union workers. (*Id.* ¶¶ 124-26).

- Extortion of P. Chimento Trucking: The Genovese family received payments from P. Chimento Trucking in exchange for labor peace. When a dispute arose regarding P. Chimento between the Genovese and Luchese crime families, Ida brokered the dispute and forced P. Chimento to accede to the Luchese family's demands and pay an additional $110,000 to the Luchese family. (*Id.* ¶¶ 127-28).

- Operation of Illegal Gambling Businesses: Ida oversaw the operation of illegal gambling businesses as part of his criminal dealings with the Genovese family. An analysis of records recovered from one of the illegal gambling businesses found that over $1,000,000 in bets were placed during an approximately one-week period. Those who owed money were threatened with violence. For example, a conversation intercepted inside one of the illegal gambling businesses recorded how one debtor was told that if he did not pay then a Genovese associate would "bust [his] fucking face open." (*Id.* ¶¶ 137-57).

- Frauds Related to a New York City Street Festival: Ida and other Genovese associates conspired to commit various frauds in connection with the Feast of San Gennaro, an annual street festival in Little Italy. Ida oversaw the operation of these frauds beginning in 1988. Hundreds of thousands of dollars (if not more) were funneled each year to members and associates of the Genoese crime family through these schemes, which defrauded the City of New York as well as charitable organizations. (*Id.* ¶¶ 158-191).

- Interstate Transportation of Stolen Property: In yet another criminal scheme, Ida conspired to steal and resell heavy-duty construction equipment. (*Id.* ¶¶ 192-94).

- Tax Fraud: Ida also committed tax fraud by significantly underreporting his income. (*Id.* ¶¶ 195, 200).

    On April 23, 1997, Ida was convicted following a lengthy jury trial. (*Id.* ¶ 71). On October 7, 1997, the Court sentenced Ida to life imprisonment on each of Count One (racketeering conspiracy, in violation of 18 U.S.C. ¶ 1962(d)) and Count Two (racketeering, in violation of 18 U.S.C. ¶ 1962(c)). (Sentencing Tr. 15). The Court also sentenced Ida to the statutory maximum sentence on his other counts of conviction – namely, ten years each on Counts 9 and 11 (conspiracies to murder); and five years each on Counts 18, 21, 43, 44, 45, 58, and 59 (schemes related to extortion, illegal gambling, theft, and fraud).[1] (*Id.*; PSR at 2).

---

[1] On appeal, the Second Circuit substantially affirmed Ida's conviction, but reversed in part due to insufficient evidence of a conspiracy to murder Ralph Desimone, *United States v. Bellomo*,

Ida is incarcerated at FMC Devens.[2]  The defendant previously submitted a request for compassionate release to the Bureau of Prisons on May 12, 2020, which was denied on June 1, 2020.  (*See* Def. Mot., Exs. B-C).

## II.  Applicable Law

A judgment of conviction that includes a sentence of imprisonment constitutes a final judgment and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)). One such circumstance, commonly referred to the "compassionate release" provision, allows a court to "reduce [a] term of imprisonment . . . after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A).

Section 3582(c)(1)(A) also requires that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." However, the Second Circuit recently held that U.S.S.G. § 1B1.13[3]—the policy statement "applicable" to compassionate release motions brought by the Director of the Bureau of Prisons—is not "applicable" where, as here, the motion is brought by the defendant. *United States v. Brooker*, 976 F.3d 228, 235-36 (2d Cir.

---

176 F.3d 580, 595 (2d Cir 1999), a crime not included the description of Ida's offense conduct given above.  In any event, the Second Circuit's partial reversal concerned only racketeering act 2(a) and Count Nine, *see Ida v. United States*, 207 F. Supp. 2d 171, 174 (S.D.N.Y. 2002), and the Second Circuit did not order a new trial because "the jury found Ida to be involved in two conspiracies to murder, [so] it is speculative to suppose that three conspiracies to commit murder made him look worse than two"; and "the counts set aside are distinct and separable from the counts on which his conviction stands." 176 F.3d at 595.

[2] The Bureau of Prisons website shows the following statistics for COVID-19 infections at FMC Devens: 97 inmates positive, 3 staff positive, 2 inmate deaths, no staff deaths, 45 inmates recovered, and 21 staff recovered.  *See* https://www.bop.gov/coronavirus/ (last accessed December 21, 2020).

[3] Guidelines Section 1B1.13 provides that a reduction of sentence is permitted if: (1) "extraordinary and compelling reasons warrant the reduction; (2) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (3) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.  With respect to the first requirement, the application notes provide that "extraordinary and compelling reasons" exist where (A) the defendant has a serious medical condition, such as a terminal illness, (B) the defendant is at least 65 years old and certain other conditions are met, or (C) the defendant's family circumstances have changed such that the defendant is the only available caregiver for a minor child or incapacitated spouse. U.S.S.G. § 1B1.13 app. note 1(A)–(C). The application notes also allow a catchall condition where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at app. note 1(D).

2020). Under *Brooker*, district courts are free "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them." *Id.* at 237.

Prior to reducing a defendant's term of imprisonment under Section 3582(c)(1)(A), the District Court must consider the factors set forth in Section 3553(a), which include, *inter alia*, "the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from future crimes by the defendant; and the need to avoid unwarranted sentencing disparities." *United States v. Roney*, __ F. App'x __, 2020 WL 6387844, at *1 (2d Cir. Nov. 2, 2020) (citing 18 U.S.C. § 3553(a))

As the movant, the defendant bears of the burden of proving that he is entitled to relief under 18 U.S.C. § 3582. *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease.").

## III.  Discussion

The Court should deny the defendant's motion.[4]  *First*, the defendant has failed to show extraordinary and compelling reasons warranting a sentence reduction.  *Second*, the factors under 18 U.S.C. § 3553(a) weigh heavily against any reduction of Ida's sentence.

### A.  The Defendant Has Not Shown Extraordinary and Compelling Reasons

The defendant has failed to establish extraordinary and compelling reasons for a reduction of sentence.  It is true, as the defendant's motion notes, and his medical records confirm,[5] that the defendant is 81 years old and has several medical conditions, including

---

[4] In addition to those addressed below, the defendant makes certain arguments that are mistaken. First, the defendant argues that the Court can excuse an inmate's administrative failure to exhaust. (Def. Mot. 8-9).  The Court need not decide that issue, as 30 days have lapsed since Ida submitted his request to the Bureau of Prisons, making his motion ripe. *See* 18 U.S.C. § 3582(c)(1)(A).  Second, the defendant asks the Court to order BOP to transfer him to home confinement. (Def. Mot. 16-18).  The Court lacks the authority to do so, as home confinement under 18 U.S.C. § 3624(c) is "exclusively within the discretion of the BOP." *United States v. Ogarro*, No. 18-CR-373-9 (RJS), 2020 WL 1876300, at *6 (S.D.N.Y. Apr. 14, 2020).  Lastly, the defendant argues that he is not "ineligible for consideration for compassionate release based on the fact that he was convicted of a violent offense." (Def. Mot. 5).  The Government does not contend otherwise.  While the fact that an inmate was a violent offender may bar the Bureau of Prisons from transferring the defendant to home confinement, it effects no such limitation on a district court's resolution of a compassionate release motion.

[5] Attached as Exhibit 1, filed under seal, are Ida's medical records that the Government obtained from the Bureau of Prisons.

Case 1:96-cr-00430-LAK   Document 723   Filed 12/21/20   Page 5 of 6

Page 5

                (Ex. 1; *see also* Def. Mot. 3, 5). While age is a recognized risk factor for severe illness from the virus that causes COVID-19, CDC guidance does not address whether ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛ is a risk factor, and says only that ⬛⬛⬛⬛⬛⬛⬛⬛ "might" be a risk factor.[6] The defendant has not established, however, that the Bureau of Prisons is not acting appropriately in responding to his medical conditions or to the COVID-19 pandemic in general. As recently as December 3, 2020, the defendant tested negative for COVID-19. (Ex. 1, at 6). In addition, Ida is now housed at a Federal Medical Center that can continue to attend to his medical conditions. In these circumstances, the defendant has failed to establish "extraordinary and compelling reasons" to reduce his sentence of imprisonment.

### B. The 18 U.S.C. § 3553(a) Factors Weigh Heavily Against Reducing the Defendant's Sentence

   Even if the defendant had met the "extraordinary and compelling reasons" requirement based on his age and medical conditions, the factors under 18 U.S.C. § 3553(a) weigh heavily against reducing the defendant's sentence. As this Court well knows, having presided over the defendant's jury trial, Ida was not merely a longstanding member of the Genovese organized crime family: he was one of its top leaders. Indeed, Ida served as Consigliere for several years until his arrest. In that role, which was beneath only the "Boss" and "Underboss," Ida was one of the principal leaders and organizers of the criminal activity of the Genovese crime family. (PSR ¶¶ 95-96, 100).

   That criminal activity went well beyond the pernicious corruption of various individuals, unions, businesses, and even a New York City street festival. The corruption effected by Ida and the Genovese family was inseparable from violence and murder, and the constant threat of its imposition. Said simply, Ida and the Genovese family secured their tribute with blood. Ida himself was convicted of conspiring to murder two individuals, one of whom was murdered in his home for being a potential Government cooperator, while the other's murder was stopped only because one of the co-conspirators became a Government cooperator. For those crimes, Ida received two sentences of life imprisonment.

   In light of Ida's crimes and his leadership of the Genovese criminal enterprise, the Section 3553(a) factors—especially the nature and circumstances of the offense, the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment—counsel against reducing his sentence. To the extent that certain factors may arguably point in Ida's favor, such as the defendant's age and declining health or the lowered risk that the defendant would be a danger to the public given his conditions, they do not outweigh the other Section 3553(a) factors noted above.

   In arguing otherwise, the defendant relies principally on an out-of-district decision, *United States v Williams*, No. 3:04CR95/MCR, 2020 WL 1751545 (N.D. Fla. Apr. 1, 2020), which granted compassionate release to an inmate who had been convicted of an armed bank

---

[6] CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed December 21, 2020).

robbery and qualified as a "career offender" at sentencing based on prior bank robberies. (Def. Mot. 10-11, 13-14, 18). That case bears little if any relevance to this motion. Among other things, it did not relate to La Cosa Nostra (or comparable criminal enterprises), nor involve any murders. Whatever may be the appropriate disposition of a serial bank robber's motion for compassionate release says little about the resolution of this motion from the one-time Consigliere of the Genovese organized crime family who was convicted of participating in—indeed, leading—a racketeering enterprise that committed various crimes over an extended time period, involving extortion, theft, fraud, violence, and murder, including two different conspiracies to murder.

## IV. Conclusion

For the foregoing reasons, the defendant's motion should be denied.

Respectfully submitted,

AUDREY STRAUSS
Acting United States Attorney for the
Southern District of New York

by:   /s/ Micah F. Fergenson
Micah F. Fergenson
Assistant United States Attorney
(212) 637-2190

Cc: Flora Edwards (Esq.)

Enclosure