Re: [EXTERNAL] James Ida (43064-054) (Request for Compassionate Release)

From: DEV-ExecAssistant-S (BOP) (dev-execassistant-s@bop.gov)

To: dipietrolaw@yahoo.com

Date: Monday, March 25, 2024 at 01:36 PM EDT

Good afternoon,

My apologies with the late response. It looks like not all my emails are going through. Per medical, Mr. Ida was seen by his physician and he indicated that the mouth sores were healing and he is to continue using the lidocaine swish and spit. There have been no significant weight changes. His RIS is currently routing for review by the Assistant Director for Correctional Programs at the Central Office level.

Thank you,

Amber Bourke
**Acting Executive Assistant/Satellite Operations Administrator**
**Public Information Officer**



```
FMC Devens
42 Patton Road
P.O. Box 880
Ayer, MA 01432
Phone:(978)796-1000
Fax: (978)796-1118
```

From: Anthony DiPietro <dipietrolaw@yahoo.com>
Sent: Saturday, February 25, 2023 9:25 AM
To: DEV-ExecAssistant (BOP) <DEV-ExecAssistant@bop.gov>; Mathew J. Mari <mjmesq@aol.com>
Subject: [EXTERNAL] James Ida (43064-054) (Request for Compassionate Release)

Good morning:

Hope all is well. It is kindly requested that the attached application for compassionate release, filed on behalf of James Ida (43064-054), be forwarded to Warden Boncher for consideration and adjudication. A hard copy will also be mailed for the Warden's review.

It is also kindly requested that email confirmation of receipt be provided. Your time and assistance are greatly appreciated. Thank you.

Anthony DiPietro, Esq.
15 Chester Avenue
White Plains, NY 10601

Tel: (914)-948-3242  
Fax: (914)-948-5372  
www.anthonydipietro.com

Attorney-Client Communication: This e-mail contains legally privileged and confidential information intended only for the individual or entity named in the message. If this communication was received in error, please notify us by reply e-mail and delete the original message.

THE LAW OFFICES OF
# ANTHONY DIPIETRO, P.C.

**15 CHESTER AVENUE**  (914) 948 3242
**WHITE PLAINS, NY 10601**  (914) 948 5372 FAX
DIPIETROLAW@YAHOO.COM

February 25, 2023

**By Mail/Email**
Warden Amy Boncher
FMC Devens
P.O. BOX 880
Ayer, MA  1432
DEV-ExecAssistant@bop.gov

    Re:   Request for Compassionate Release
             James Ida, 43064-054

Dear Warden Boncher:

     This letter is respectfully submitted on behalf of our client, James Ida, Reg. No. 43064-054, seeking a reduction of Mr. Ida's sentence to time-served under 18 U.S.C. § 3582(c)(1)(A)[1] and in consideration of the factors articulated under Bureau of Prisons (BOP) Policy Statement 5050.50 § 4(a) ("New Law" Elderly Inmates). Mr. Ida's eligibility for early release is well established based on the collective consideration of his advanced age (83), chronic medical conditions (i.e., Parkinson's Disease), time served (27+ years), and rehabilitation. When considered in the aggregate, such factors overwhelmingly provide extraordinary circumstances that militate in favor of granting early release under 18 U.S.C. § 3582(c)(1)(A).

     As of this writing, Mr. Ida is 83 years old and suffers from many serious medical ailments for which he will not recover. Mr. Ida's medical ailments are both chronic and irreversible, most dominated by a diagnosis of Parkinson's disease. Mr. Ida has now served more than 27 consecutive years of imprisonment, and his rehabilitation is best exemplified by his stellar prison record and institutional achievements. Based on present circumstances, Mr. Ida's current recidivism risk is nonexistent, and his release would present no danger to the community.

To be sure, Mr. Ida's present circumstances are precisely those in which Congress intended to reach with the enactment of § 3582(c)(1)(A) S. Rep. No. 98-225, at 55-56, 121 (1983) (noting that Congress envisioned 18 U.S.C. § 3582(c)(1)(A) to address changed circumstances that would warrant an inmate's early release, especially in instances of severe illness. Specifically, acting as a "safety valve for [the] modification of sentences", § 3582(c)(1)(A) is intended to reduce sentences when justified by the various factors and reasons that the U.S. Parole Commission previously had considered in making parole determinations.).

Due to the unfortunate changed circumstance of Mr. Ida's advanced age and rapidly declining health, his early release is warranted both as a matter of law and human decency. Presently, Mr. Ida's current quality of life is negligible at best and his life expectancy is admittedly grim due to his advanced age and continued struggle with a multitude of serious medical ailments, including Parkinson's disease. Indeed, Mr. Ida's quality of life has dramatically deteriorated in the past several years due to the progression of such disease. Recent medical reports reveal that Mr. Ida has unintentionally lost 10-15 pounds in the last year and that he has suffered with bouts of hearing loss, vision impairment and tremors. By any measure, an elderly and sick inmate, as Mr. Ida presents here, deserves the decency and dignity to be cared for outside of a prison facility and to spend his last days of his life in the comfort of his loved ones.

During his long incarceration, Mr. Ida has continuously exhibited good conduct and has maintained positive relations with his loved ones, whom are committed to provide full care for Mr. Ida upon his early release. Collectively, given his advanced age, medical ailments, and familial support, Mr. Ida would present no risk to the public if released early. *See* U.S. Sent'g Comm'n, *The Effects of Aging on Recidivism Among Federal Offenders*[1]; *see also United States v. Piggott*, No. 94 Cr. 417, 2022 U.S. Dist. LEXIS 5293, 2022 WL 118632, at *3 (S.D.N.Y. Jan. 12, 2020) ("It is also well-established that recidivism decreases significantly with age."); *United States v. Scott*, 239 F. Supp. 3d 629, 635

---

[1] *available* at www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf.

(E.D.N.Y. 2017) ("[Defendant's] strong family support and good job prospects make recidivism unlikely."); *United States v. Bass*, 462 F. Supp. 3d 176, 189 (N.D.N.Y. 2020) (citing the Sentencing Commission's guidelines to support the unlikelihood of the defendant's recidivism given his advanced age, and noting defendant's "mostly clean disciplinary record from his time in prison" and that defendant's ability to "largely follow[] the rules while incarcerated suggests that he will do so once released, which minimizes the danger he poses to the community").

In fact, research studies have confirmed that elderly inmates incarcerated for violent offenses are nevertheless very unlikely to reoffend when released:

> [W]hen considering dangerous, violent, and predatory inmates, one does not usually envision an elderly man hobbling down a prison corridor with a cane or walker. However,…<u>some of the most dangerous and persistent criminals</u> who were sentenced to life in prison without parole 30 years ago are now old, debilitated, frail, chronically ill, depressed, and no longer considered a threat to society or the institution.

Evelyn J. Patterson, *The Dose-Response of Time Served in Prison on Mortality: New York State, 1989-2003*, 103 Am. J. of Pub. Health 523, 526 (2013) (emphasis added).

Furthermore, the BOP has already determined that Mr. Ida's risk of recidivism is minimal (*See* Ida's Male Pattern Risk Scoring). The BOP has assessed that the risk levels associated with Mr. Ida's early release is "minimum" based upon a combination of factors—to include his age, offense conduct, criminal history, institutional conduct, and programming. *Id*. The BOP has further determined that Mr. Ida is eligible to be housed at a low security facility due to such favorable factors. (*See* Ida's Male Custody Classification Form).

Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and (ii), an inmate's sentence should be reduced if either there exist extraordinary and compelling reasons to warrant such a reduction. The considerations enumerated in Application Note 1(A)(ii) and (B), further provide that extraordinary and compelling circumstances exists if the inmate is -

> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant. The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

18 U.S.C.S. app. § 1B1.13 (LexisNexis, Lexis Advance through Public Law 117-248, approved December 20, 2022).

Likewise, BOP PS 5050.50(3) provides further guidance as to factors that militate in favor of early release, noting that "RIS consideration" should be afforded "to inmates who have an incurable, progressive illness or who have suffered a debilitating injury from which they will not recover." *Id.* Also, the BOP has further directed, PS 5050.50(4), that elderly inmates should especially be considered for compassionate relief if they present severe or chronic medical conditions related to the aging process, experience deteriorating mental or physical health that substantially diminishes their ability to function in a correctional facility, and conventional treatment promises no substantial improvement to their mental or physical condition. *Id.*

Ultimately, Mr. Ida clearly meets the dispositive criteria for early release, as his "age, chronic medical conditions, time served, and rehabilitation, when considered together, warrant compassionate release." *United States v. Grecco*, No. 89-00250, 2022 U.S. Dist. LEXIS 209668, at *9 (D.N.J. Nov. 18, 2022). Most notably, Mr. Ida's current health is critically unstable and requires complex chronic care. In this regard, Mr. Ida's health continues to decline, and conventional treatment promises no substantial improvement. The multitude of severe, chronic medical conditions Mr. Ida suffers from has substantially diminished his

ability to provide self-care within a correctional facility and presents safety risks, as evidenced by his vulnerabilities to hearing loss, vision impairment, and inability to control body movement (i.e., tremors and shivering).

To be sure, it is well established that Parkinson's disease is a serious "progressive disorder that affects the nervous system and the parts of the body controlled by the nerves." Mayo Clinic, *Parkinson's Disease*, *available* at www.mayoclinic.org/diseases-conditions/parkinsons-disease/symptoms-causes/syc-20376055?p=1. Specifically, as the disease progresses, it affects the patient's entire body, causing "trouble walking, talking, or doing simple tasks". Specifically, those affected by such disease will experience chronic conditions that include,

- Trembling of hands, arms, legs, jaw and face
- Stiffness of the arms, legs and trunk
- Slowness of movement
- Poor balance and coordination

*See* Medline Plus, *Parkinson's Disease*, *available at* www.medlineplus.gov/parkinsonsdisease.html.

Notably, Mr. Ida's serious health struggles have progressed over the past decade, coinciding with other struggles related to the aging process itself. In this regard, Mr. Ida's bout with Parkinson's disease has been long going (12+ years), and his imprisonment (27+ years) has and continues to be more punitive than necessary as a result thereof—beyond what is necessary to serve the purposes of 18 U.S.C. § 3553(a)(2). *United States v. Wright*, No. 2:96-cr-80876-3, 2020 U.S. Dist. LEXIS 198340, at *11 (E.D. Mich. Oct. 26, 2020) (noting that the inmate's current circumstances render him doomed to "medical purgatory" that "serving out the rest of his life sentence would be greater than necessary to serve the purposes of 18 U.S.C. § 3553(a)(2).") (citing *United States v. Wong Chi Fai*, No. 93-cr-1340, 2019 U.S. Dist. LEXIS 126774, 2019 WL 3428504, at *4 (E.D.N.Y. July 30, 2019)); *see also United States v. McGraw*, No. 2:02-cr-00018-LJM-CMM-01, 2019 U.S. Dist. LEXIS 78370 (S.D. Ind. May 9, 2019) (granting compassionate release to a defendant

that "served much of his sentence while seriously ill and in physical discomfort").

Given his advanced age and illness, Mr. Ida's well-being will continue to rapidly regress in a prison setting. In this regard, it is impossible for Mr. Ida to maintain optimum health in a prison environment, because the stressors associated with such environment only further burden and exacerbates the progression of illness and aging. The conditions of confinement—to include a daily limitation on movement, the stressors associated with prison life (especially at 83 years of age), and a lack of daily treatment, rehabilitation, and monitoring by licensed medical professions—will only help worsen Mr. Ida's quality of life and collectively contribute to the rapid regression of his mental and physical health. *See* Jason Laday, *Hard time and health care: Challenges in caring for the prison population*, Healio Rheumatology (October 19, 2020)[2]; Boucher NA, Van Houtven CH, Dawson WD, *Older Adults Post-Incarceration: Restructuring Long-term Services and Supports in the Time of COVID-19*, J Am Med Dir Assoc. (March 22, 2021) ("Prison accelerates aging such that the prison population develops chronic illness 10 to 15 years earlier than community counterparts."); *United States v. Taveras*, 436 F. Supp.3d 493, 500 (E.D.N.Y. 2006) (life expectancy within federal prison is considerably shortened); *see also* Jaul E, Barron J., *Age-Related Diseases and Clinical and Public Health Implications for the 85 Years Old and Over Population*, Front Public Health (December 11, 2017); Office of the Inspector General, U.S. Department of Justice, *The Impact of an Aging Inmate Population on the Federal Bureau of Prisons*, www.oig.justice.gov/reports/2015/e1505.pdf   noting the challenges that elderly inmates often encounter, including a lack of adequate care and a suitable setting to cope with both illness and the aging process).

It can also not be disputed that Mr. Ida's long imprisonment (27+ years) has already proven to fully accomplish the true purpose of sentencing, taking an account of "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need for the sentence to facilitate retribution, deterrence,

---

[2] *available at* www.healio.com/news/rheumatology/20201009/hard-time-and-health-care-challenges-in-caring-for-the-prison-population.

incapacitation, and rehabilitation. 18 U.S.C. § 3553(a). Mr. Ida has already served more than twenty-seven years in prison, reflecting a sufficient punishment—*i.e.,* a sentence longer than the median imposed for a murder conviction in both federal and state court.[5] *See* United States Sentencing Commission Sourcebook tbl. 15 (2019) (the median sentence for a murder conviction is 240 months); U.S. Dept. of Justice, Bureau of Justice Statistics, *Time Served in State Prison, 2016* (Nov. 2018) (median time served for a murder conviction amongst all state courts is 13.4 years).

    Notably, eligibility for early release is not to be dictated by the underlying offense but dependent on the inmate's current extraordinary circumstances and risk of release at the time of the application. All of which overwhelmingly favors Mr. Ida's early release. *See e.g., United States v. Rios*, Docket No. 3:94-cr-112 (JBA), 2020 U.S. Dist. LEXIS 230074, 2020 WL 7246440 (D. Conn. Dec. 8, 2020) (granting compassionate release to defendant convicted of VICAR murder and sentenced to life); *United States v. Perez*, No. 3:02cr7 (JBA), 2021 U.S. Dist. LEXIS 41040 (D. Conn. Mar. 4, 2021) (reducing life sentence after 23 years for Defendant was convicted of procuring a murder to protect his drug distribution operation); *United States v. Underwood*, No. 88 Cr. 822, 2021 U.S. Dist. LEXIS 8378, 2021 WL 3204834, at *1 (S.D.N.Y. Jan. 15, 2021) (granting compassionate release motion where at least five, brutal murders were committed at defendant's direction); *United States v. Ramirez*, 571 F. Supp. 3d 40, 42, 52 (S.D.N.Y. Nov. 10, 2021) (reducing forty-eight-year sentence by eight years where the defendant was the leader of a drug trafficking organization and was personally involved in two murders); *United States v. Rodriguez*, 492 F. Supp. 3d 306 (S.D.N.Y. 2020) (reducing sentence to thirty years where defendant participated in torture and murder of government informant); *Wong Chi Fai*, 2019 U.S. Dist. LEXIS 126774, 2019 WL 3428504, at *3 (granting compassionate release to 65-year-old gang leader who had engaged in multiple murder conspiracies and served only 26-years of a term of life imprisonment); *United States v. Rice*, 2020 WL 4505813, at *4 (S.D.N.Y. Aug. 5, 2020) (granting compassionate release despite defendant's conviction for "very serious crimes" where, "given [d]efendant's advanced age and serious health problems, he is significantly less likely to recidivate").

      Overall, Mr. Ida's current circumstances and dire health conditions collectively establish extraordinary circumstances that militate in favor of his early release under 18 U.S.C. § 3582(c)(1)(A) and BOP PS 5050.50 § 4(a). Accordingly, it is respectfully requested that Mr. Ida be granted compassionate release.

                                    Respectfully submitted,

                                    *Anthony DiPietro*
                                    Anthony DiPietro, Esq.